AKIN *v.* FEAGIN.

On the facts in evidence, the court did not err in granting a non-
    suit.                                            *Judgment affirmed.*

August 1, 1892.

Evidence.   Nonsuit.   Before Judge MARTIN.   Hous-
ton superior court.   October term, 1891.

The action was by Akin, assignee of Mallory Bros. & Co., against Feagin, upon an account for $199.65. The items charged in the account were, "to sawing lumber by agreement with Mallory Bros. & Co., and delivered to him, 55,089 feet at 40 cents per hundred, $220.35; 22,602 feet at 45 cents per 100, $101.70," making $323.05. There was a credit, by "amounts advanced to Akin by Feagin, as per bill rendered by said Feagin, $122.40." The court below granted a nonsuit, and the plaintiff excepted.

The plaintiff introduced an assignment of the account, dated December 30th, 1890, directed to Feagin and signed by Mallory Bros. & Co., stating that for value received they transferred, released and relinquished to Akin all claim, right and interest that they had or might have had in the matter of account between Feagin and Akin, for lumber, etc., sawed by Akin for Feagin at any time, without recourse on them. Akin testified, in substance: I am the owner of the account, which is correct and unpaid. The transfer was signed by E. Y. Mallory in my presence at its date. In 1889, myself and Matthews bought a steam saw-mill and fixtures of Smith & Mallory. Matthews got into a scrape and ran away, but before going sold the mill and everything belonging to it to me, and I agreed to pay the debts of the concern. There was a balance of $950 or $1,000 due on the mill, and in the spring of 1890, Mallory Bros. & Co., successors to Smith & Mallory, Feagin and myself made this arrangement: Feagin wanted some lumber sawed, and agreed to haul his stocks to the mill. I was to superintend the mill, and have lumber sawed. Feagin was to advance and pay, from what he might owe for sawing, the money to pay the running expenses of the mill, including my wages, and pay the balance he owed for sawing to Mallory Bros. & Co. on my debt to them. Feagin was to haul the lumber away, supervise the

business, keep account of lumber sawed and expenses, and report to and pay over balance to Mallory Bros. & Co. I was to report to Feagin amount sawed and expenses. The expense account stated in the account sued on was made out by Feagin and given to me after I had settled with Mallory Bros. & Co., but before the transfer was made. The terms of settlement were, that I was to pay $50 cash, $50 in the fall of 1891, and they to receipt in full for balance I owed them on the mill, which, allowing the engine at the price sold to Feagin, $650, amounted to about $300 or $350. They were also to transfer the amount which Feagin owed for lumber, to me, which they did in the written transfer. I did not authorize Mallory Bros. & Co. to sell the engine or lumber account to Feagin, but was willing for sale of the engine at $650 to stand, and ratified that sale in my settlement with them. I showed Mallory the statement of lumber sawed and expenses furnished by Feagin before we finally settled. I paid the $50 cash, and gave a mortgage to secure the $50 due in the fall. Feagin was to pay 40 cents a hundred for sawing. The first item of the account consists of 50,000 feet counted by myself and Jones, who was sent by Feagin to see to the count, and Feagin told me afterwards that Jones had reported the 50,000 feet. The 5,089 feet was lumber hauled away and counted by Feagin, and reported by him to me on the paper hereafter mentioned. The items are in his handwriting, and the calculations and adding up are in my writing. The 55,089 feet was not charged on the book. The second item, 22,602 feet, was made up of lumber sawed from day to day afterwards and put down in two books (admitted in evidence; also Feagin's account of 55,089 feet, and Feagin's account of expenses). I know how to measure and calculate lumber. Never made any statement of the lumber account to Mallory which showed that I owed Feagin, or that the expenses

were more than what Feagin owed for sawing. The 22,602 feet was piled up by me, Feagin agreeing to pay five cents per hundred for piling. He was to do the piling under the agreement. Neither Mallory Bros. nor I have ever tendered Feagin his $650 back and demanded a cancellation of the trade. Feagin stopped me from sawing the lumber.

The expense account in evidence was in Feagin's handwriting and footed up $122.40. The lumber account kept by Feagin and in his handwriting footed up 5,089 feet. The lumber charged on the book to Feagin by Akin footed up 22,602 feet.

Mallory testified in substance the same as Akin, as to the written agreement made between Akin, Feagin and Mallory Bros. & Co. Thought Feagin was to pay 40 cents per 100 for sawing, pay Akin the necessary running expenses, and pay balance to Mallory Bros. & Co. from time to time, as he might have the money in hand, to be paid to account of Akin & Matthews to liquidate their indebtedness. Feagin bought the mill and engine from Mallory Bros. & Co. for $650, and the proceeds went to the credit of Akin & Matthews. The mill was levied on and work stopped. The matter was temporarily arranged, Akin being given another chance to pull through, but on complaint by Feagin that Akin was not half attending to his business and his expenses were about consuming all the proceeds, we decided we had better get something for the mill before it was ruined. We had repeatedly asked for a statement but had never received one. We were some time trading with Feagin about the sale of the mill. He stated that there was little or nothing coming to us, and that it had taken almost all that Akin had made to pay his expenses, and whatever he had in hand would be very small. Thinking there was very little if any money in Feagin's hands, and not having been able to find out

anything about it, we included in the amount for which we sold him the engine whatever funds might be in Feagin's hands. I considered the engine worth about the price agreed on. Feagin said he would only give $650 for the engine and what he might owe Akin for sawing lumber, that he might owe him a small amount, had never figured it up but did not think it would amount to much. The proceeds of the sale of the engine and mill were applied to the credit of Akin & Matthews, leaving a balance due of about $350, and I agreed with Akin, if he would pay $50 and give his note for $50, I would settle with him in full, which he did, and the matter was settled. At the time of the settlement Akin stated that Feagin owed him considerable money. I told him I didn't think Feagin owed him a cent. Akin said he had his accounts, or a memorandum of them. He gave the figures, and after a calculation of the amount he had sawed, multiplied by the price he was to get per thousand, and deducting from this the number of days engaged in sawing, multiplied by daily expenses, it appeared that he really owed Feagin some money. Akin stated that the figures he had were not correct, that he had another statement at home which would show that he had cut more lumber for Feagin. He was asked to get them and meet us a few days later, which he did. We did not enter into any particulars on his return, except the settlement that had been agreed on. I stated again I did not think Feagin owed him anything, and he asked me, after saying he thought Feagin did, if I would give him the amount should there be anything coming. I said it would be useless to do this as there was nothing coming, but I did not object to signing such a paper, and I signed it. The title of the engine and mill was to remain in Mallory Bros. & Co. until paid for. Akin was to keep account of lumber sawed for Feagin and the amount Feagin paid him,

and account to Mallory Bros. & Co. so that they could settle with Feagin. This Akin did not do, though we called on him from time to time for the account. We finally took the engine and mill back to be sold on account of Akin & Matthews, and sold it to Feagin. At one time, I think, Feagin said that there might be about $75 due Mallory Bros. & Co. for lumber sawed by Akin & Matthews or by Akin, but that he did not know, that there would not be much left after the expenses were paid. We considered when Feagin paid the $650 he had settled with us in full for the engine and all the lumber sawed for him. Akin afterwards settled the $350 still due us, and in the settlement I told him what had passed between me and Feagin—the settlement made with Feagin, and credit given him on his note. The $100 was not mentioned, but Akin stated that Feagin did owe him considerable money. I then said, " You ought to have rendered a statement to Mallory Bros. & Co. in accordance with agreement, and have failed to do it, and I have no *data* by which to arrive at true amount due "; and then Akin went into the calculation above mentioned, in which I found that Feagin had actually overpaid him, and it was at that time Akin asked me to give him whatever Feagin was owing to Mallory Bros. & Co. on lumber, etc. Giles testified, that he was attorney for Akin in making the settlement with Mallory Bros. & Co.; that Akin showed Mallory the statement of lumber sawed and expenses, as sued on, before the transfer was made, and no other statement was made then by Akin to Mallory or at any other time in witness's presence. About the time the suit was brought, Feagin told witness that after the trade with Mallory Bros. & Co., he (Feagin) told Mallory he had got Mallory for about $150.

A. S. GILES, for plaintiff.

HARDEMAN, DAVIS & TURNER, for defendant.